THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HISPEC WHEEL & TIRE, INC., | ) |
| Plaintiff | ) ) ) |
| vs. | ) ) CAUSE NO. 3:04-CV-340RM |
| TREDIT TIRE & WHEEL CO., INC., et al., | ) ) ) |
| Defendants | ) |

OPINION AND ORDER

In May 2003, HiSpec Wheel & Tire sued U.S. Wheel Corporation in this court alleging that U.S. Wheel had infringed on its trademark in an aluminum wheel design. The parties reached a settlement agreement that June, and the action was dismissed with prejudice. *See* Cause No. 3:03-CV-322RM. U.S. Wheel allegedly resumed selling counterfeit wheels, so HiSpec brought a second lawsuit against U.S. Wheel in April 2004 for breach of the prior settlement agreement, trademark infringement, and tortious interference with its business relationships. Based representations by U.S. Wheel's owner, Elliot Mason, the matter was dismissed without prejudice pursuant to FED. R. CIV. P. 41(a). *See* Cause No. 3:04-CV-285RM.

HiSpec again sues U.S. Wheel for infringement under the Lanham Act (Count V) and for breach of contract with respect to the settlement agreement reached in the 2003 case (Count I). HiSpec also brings a claim against U.S. Wheel

and Mr. Mason for fraudulently inducing it to settle the 2004 lawsuit (Count III).[1] The parties have filed several motions for partial summary judgment: U.S. Wheels seeks judgment on HiSpec's infringement claim; Mr. Mason seeks judgment on HiSpec's fraudulent inducement claim; and HiSpec seeks judgment on its breach of contract claim.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391

---

[1] The remaining claims against several other defendants were dismissed because the court lacked personal jurisdiction over a defendant [Doc # 73], or through stipulation [Doc # 136] or default judgment [Doc # 150].

2

F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events")(quoting Schacht v. Wisconsin Dep't of Corr.,175 F.3d 497, 504 (7th Cir. 1999)).

U.S. WHEEL'S MOTION FOR SUMMARY JUDGMENT ON THE INFRINGEMENT CLAIM

HiSpec claims a trademark in the design of a star-shaped aluminum trailer wheel know as the Series #4. The alleged trademark is unregistered, so it is protected, if at all, under § 43(a) of the Lanham Act, which "has been held to embrace not just word marks ... but... in recent years has been expanded by many Courts of Appeals to encompass the design of a product." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000).

U.S. Wheel seeks summary judgment on HiSpec's infringement claim on two grounds. First, it says HiSpec cannot show that it has a protectable trademark in its Series #4 wheel design because the design hasn't acquired a "secondary meaning" in the marketplace.[2] *See* Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc., 149 F.3d 722, 729 (7th Cir. 1998) (affirming district court's

---

[2] U.S. Wheel also says it is entitled to summary judgment on HiSpec's infringement claim because the Series #4 design is functional. The court needn't determine this point since HiSpec cannot establish that it has a protectable trademark in the Series #4 wheel design. Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 291 (7th Cir. 1998)("If the plaintiff successfully establishes these elements, the defendant can prevail if the defendant demonstrates that the plaintiff's trade dress is functional.").

3

entry of summary judgment where plaintiff couldn't show trademark had acquired a secondary meaning); Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d 1264, 1269 (7th Cir. 1989). Second, U.S. Wheel says HiSpec cannot show the Series #4 design has been infringed because HiSpec cannot demonstrate a likelihood of confusion on the consuming public's part as to the source or affiliation of its wheel design. *See* Packman v. Chicago Tribune Co., 267 F.3d 628, 643 (7th Cir. 2001) (district court correctly determined Ms. Packman could not prevail on her claims because she had failed to demonstrate a jury question as to likelihood of confusion).

HiSpec filed a brief in response to the summary judgment motion addressing the merits of its infringement claim. HiSpec also moved, by separate motion, to strike all evidence U.S. Wheel presents in support of its summary judgment, arguing that any evidence contradicting its claim to a trademark in the Series #4 design is irrelevant since this "defense" was already litigated in the 2003 suit. U.S. Wheel has filed a response to the motion to strike, arguing that the doctrine of claim preclusion likewise bars HiSpec's infringement claim. Because "claim preclusion is a salutary instrument that 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication,'" the court addresses the preclusion issue before turning to the merits of U.S. Wheel's motion. ITOFCA, Inc. v. MegaTrans Logistics, Inc., 322 F.3d 928, 933 (7th Cir. 2003) (J. Ripple concurring) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

4

Claim preclusion prohibits parties from relitigating issues decided in a prior suit, as well as any defenses that could have been raised in the earlier action. Kratville v. Runyon, 90 F.3d 195, 199 (7th Cir. 1996); *accord* Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469, 479 (Fed. Cir. 1991). A claim or defense is barred where there is a "(1) judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits." Brzostowski v. Laidlaw Waste Sys., Inc., 49 F.3d 337, 338 (7th Cir. 1995).

The parties don't dispute that HiSpec sued U.S. Wheel in May 2003 under the Lanham Act, alleging that U.S. Wheel was infringing on its trademark in the Series #4 design by manufacturing and marketing a "counterfeit trailer wheel," and that the parties entered into a settlement and stipulation of dismissal, so the identity of parties requirement is met. The U.S. Wheel design that was at issue in the 2003 suit was the Series #35, which it had purchased from a foreign corporation. U.S. Wheel represented in the settlement agreement that it had sold 3,204 Series #35 wheels to Tredit Tire & Wheel Co. as of June 20, 2003, and that its actions were "in violation of HiSpec's trademark rights relating to the Series #4 Wheel."

A voluntary dismissal with prejudice pursuant to a stipulation is a judgment on the merits and generally bars further litigation between the parties on the claims presented. Archer v. Warner, 538 U.S. 314, 322 (2003); Arizona v. California, 530 U.S. 392, 414 (2000); La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 907-908 (7th Cir. 1990). The settlement agreement in the

5

2003 case states, "[t]he parties hereto now wish to fully, finally, and forever settle, compromise, and resolve certain outstanding matters between them." Based on this agreement, the court granted a joint stipulation of dismissal with prejudice and judgment was entered. The dismissal of the 2003 suit is a judgment on the merits.

HiSpec says there is no identity in the causes of action because this suit presents "different instances of trademark infringement ... [specifically the] sale [ ] of the Series # 35 wheels ... and ... the Series #135 wheels after June 23, 2003." Claims have identity for preclusion purposes if the second claim "emerges from the same 'core of operative facts' as [the] earlier action." Brzostowski v. Laidlaw Waste Sys., Inc., 49 F.3d at 339. "[O]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost," Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 593 (7th Cir.1986), but "[t]raditional principles of preclusion allow additional litigation if some new wrong occurs." Supporters to Oppose Pollution, Inc. v. Heritage Group, 973 F.2d 1320, 1326 (7th Cir. 1992).

HiSpec alleges two new instances of infringement subsequent to the settlement agreement. First, HiSpec alleges that U.S. Wheel sold several hundred Series #35 wheels to Tredit shortly after the June 20, 2003 settlement; and second, that U.S. Wheel developed the Series #135 wheel, which it continued to sell to Tredit in place of the Series #35 for more than a year after the settlement.

6

These claims arise from new wrongs and couldn't have been presented in the first case, so they aren't precluded.[3]

HiSpec says "claim" preclusion bars U.S. Wheel from asserting the "defense" of trademark validity against these new claims of infringement because such a defense could have been raised in the prior law suit involving the Series #4 wheel design. In support of its argument, HiSpec cites Hallco Mfg. Co., Inc. v. Foster, 256 F.3d 1290, 1297 (Fed. Cir. 2001) (Foster II), but its reliance is misplaced. This case differs from Hallco Mfg. Co., Inc. v. Foster because the theory of recovery is based upon the infringement of a non-registered trademark, not a registered patent. A registered patent or trademark, unlike an unregistered tradedress protected under § 43(a) of the Lanham Act, is presumed valid. Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. at 210; Packman v. Chicago Tribune Co., 267 F.3d at 638; Cornwall v. U.S. Const. Mfg., Inc.,800 F.2d 250, 252 (Fed. Cir. 1986). HiSpec has the burden of the showing its unregistered design is entitled protection under trademark law in order to recover on its infringement claim. Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc., 149 F.3d at 726-727. This determination is an "issue" for preclusion purposes. *See, e.g.,* Zip Dee, Inc. v. Dometic Corp., 886 F. Supp. 1427, 1432 n.7 (N.D. Ill. 1995); *accord* Jet, Inc. v. Sewage Aeration Systems, 223 F.3d 1360, 1364 (Fed. Cir. 2000) (the question of likelihood of confusion an "issue" for purposes of preclusion).

---

[3] A claim for infringement based upon the sale of Series #35 wheels before June 23, 2003 is based on the same transaction that gave rise to the first suit, so to the extent HiSpec brings such a claim, it is barred.

A party seeking to invoke issue preclusion must show four things: (1) the issue sought to be precluded must be the same as that involved in the prior action, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action. Washington Group Intern., Inc. v. Bell, Boyd & Lloyd LLC, 383 F.3d 633, 636 (7th Cir. 2004). Issue preclusion is inappropriate in this case because the trademark validity issue hasn't been actually litigated.

A consented judgment doesn't preclude future litigation on any issues presented unless the parties clearly intended their agreement to have such an effect. Archer v. Warner, 538 U.S. at 322; Arizona v. California, 530 U.S. at 414; La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 914, 907-908 (7th Cir. 1990) . U.S. Wheel represents in the settlement agreement that its "conduct was in violation of HiSpec's trademark rights relating to the Series #4 Wheels," but findings regarding trademark validity accompanied neither the stipulation nor the dismissal order, so the issue of HiSpec's trademark in the wheel design hasn't been actually litigated. *See, e.g.,* Pelletier v. Zweifel, 921 F.2d 1465, 1501 (11th Cir. 1991) ("The preclusive effect of a dismissal with prejudice, an unlitigated matter, ... is examined under the requirements for claim preclusion. Since such a judgment is not accompanied by findings, it does not, however, collaterally estop the plaintiff from raising issues that might have been litigated if the case had proceeded to trial."). U.S. Wheel isn't precluded from challenging the validity of

8

HiSpec's trademark in the Series #4 wheel design, and HiSpec's motion to strike evidence to the contrary is denied.

To demonstrate a valid, protectable trademark in its Series #4 design, HiSpec must show the design has achieved a "secondary meaning," which is "acquired when 'in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself.'" Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 163 (1995) (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)). Secondary meaning can been established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying. Packman v. Chicago Tribune Co., 267 F.3d at 64; Platinum Home Mortgage, 149 F.3d at 728; Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387, 393 (7th Cir. 1992). The consuming public needn't be aware of the name of the source; the plaintiff can establish secondary meaning by showing that "the public is aware that the product comes from a single, though anonymous source." Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d at 1266-1267 (quoting Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 380 (7th Cir. 1976)). The relevant time period for determining whether a secondary meaning has been acquired is from 1999 (when HiSpec began producing the Series #4 design wheel) to 2003 (when U.S. Wheel allegedly began infringing on the design). HiSpec offers no consumer surveys, and the

9

remaining factors show HiSpec's assertion that the consuming public mentally associates the Series #4 design with HiSpec is purely speculative.

The direct consumer testimony about the Series #4 design doesn't weigh in HiSpec's favor; if anything, it weighs against it. Thomas Pontius testified that he purchased star-shaped aluminum trailer wheels during the relevant time period, but that he did "not associate the shape, look, or design of the [Series #4] with any particular manufacturer..." because he dealt only with his distributor. And while he also testified that "a wheel [that] looks the same as another wheel [is] [ ] most likely [ ] made by the same manufacture," he doesn't testify that he, or any other consumer, was aware the Series #4 came from one source. Tredit was a distributor of the Series #4 wheel, and its president, Terrence O'Rourke, testified that he believed HiSpec to be the only manufacturer of a 5-spoke aluminum rim in the trailer industry during this period, and that consumers commonly referred to this design as the "5 star" wheel. This evidence, however, doesn't suggest these consumers associated the Series #4 design exclusively with HiSpec.

The length and manner which the Series #4 design was used also may be relevant, and HiSpec has arguably manufactured a distinctive star-shaped wheel for a four-year period. But a number of manufactures in the industry previously sold aluminum star-shaped trailer wheels, so the duration of HiSpec's use doesn't necessarily weigh in its favor. *See, e.g.,* Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d at 1269. HiSpec also says its increased sales during this time period, but the court cannot meaningfully assess its gross sales in a vacuum. Id. at 1270; *see*

10

*also* Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp., 667 F. Supp. 1221, 1231 (N.D. Ill. 1987) (evidence of ten million dollars in sales not persuasive without context). The court has no information on the size of HiSpec's sales, the number of customers or individual sales made by HiSpec, nor its competitors' gross sales, so this factor can't be given much weight.

HiSpec points to its having advertised the Series #4 design throughout the trailer industry over the same time period. But the testimony concerning the advertising of the Series #4 design doesn't suggest that any of packaging, brochures, warranties, or promotions specifically emphasized or encouraged an association between the Series #4 design and HiSpec. There is a difference between a consumer knowing that HiSpec sells aluminum wheels and a consumer mentally associating the actual design of the Series #4 with only HiSpec. *See* Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc., 149 F.3d at 729; Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d at 1268-1269. The evidence of HiSpec's advertising is entirely circumstantial, and because the evidence doesn't indicate that consumers mentally associated the Series #4 design with HiSpec, it cannot establish a prima facie showing of secondary meaning at summary judgment. Spraying Systems Co. v. Delavan, Inc., 975 F.2d at 393; Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d at 1269.

Finally, HiSpec says U.S. Wheel's use of the Series #35 wheel in place of the Series #4 is evidence of intentional copying. There may be an issue of fact as to whether U.S. Wheel was intentionally copying the Series #4 design, but the

dispute doesn't preclude summary judgment because the probative value of this evidence is minimal without some evidence that the public viewed HiSpec's design as signifying "the source of the product rather than the product itself." *See* Schwinn Bicycle Co. v. Ross Bicycles, Inc., 870 F.2d 1176, 1182 n.13 (7th Cir. 1989); *see also* Flotec, Inc. v. Southern Research, Inc., 16 F. Supp.2d 992, 1011 (S.D. Ind. 1998).

In sum, the summary judgment record would not allow a reasonable trier of fact to rationally find that the Series #4 wheel design has achieved a secondary meaning, so HiSpec's interest in wheel design isn't protected, and U.S. Wheel is entitled to judgment on the infringement claim.

### MR. MASON'S MOTION FOR SUMMARY JUDGMENT ON THE FRAUDULENT INDUCEMENT CLAIM

HiSpec's complaint alleges that Mr. Mason made several material misrepresentations in fraudulently inducing it to enter into a settlement agreement and voluntarily dismiss its 2004 lawsuit against U.S. Wheel. Mr. Mason says this claim fails as a matter of law because (1) HiSpec has elected the remedy of rescinding the settlement agreement by pursuing an infringement claim in this lawsuit, and (2) HiSpec suffered no damages since the dismissal of the 2004 lawsuit was without prejudice. The court doesn't agree.

The election of remedies doctrine has a procedural and substantive component. Olympia Hotels Corp. v. Johnson Wax Development Corp., 908 F.2d

12

1363, 1371 (7th Cir. 1990). The Federal Rules of Civil Procedure, which superseded common law pleading in federal courts, expressly abolish election of remedies. Id (citing FED. R. CIV. P. 8(e)(2)). Those rules apply in all federal civil litigation, even if the issue being litigated is one of state law. Id. The doctrine, however, survives in its substantive aspect to prevent double recovery. HiSpec is therefore entitled to plead claims on theories of both trademark infringement against U.S. Wheel and fraudulent inducement against Mr. Mason, but at trial, it may not recover damages that put it in a better position than it would have been had Mr. Mason made good on his alleged misrepresentations. Id. at 1371-1372.

Fraudulent inducement occurs when fraudulent misrepresentations induce a party to enter into an agreement. Lightning Litho, Inc. v. Danka Industries, Inc., 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002), *trans. denied.* One bringing an action for fraud in the inducement generally must elect between two remedies: "[o]ne alternative is to affirm the contract, retain the benefits, and seek damages ... [t]he other alternative is to rescind the contract, return any benefits received, and be returned to the status quo." America's Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc., 833 N.E.2d 1059, 1068 (Ind. Ct. App. 2005). "When a party elects to affirm a contract induced by fraudulent misrepresentations, the party may only seek tort damages." Lightning Litho, Inc. v. Danka Industries, Inc.,776 N.E.2d at 1242. In Indiana, these damages are measured using the "benefit of the bargain." Id. at 1243. "This rule compels the party guilty of fraud to make good his or her

13

representations, and under its operation, the parties are placed in the same position as if the contract and representations had been fully performed." Id.

In consideration for HiSpec's agreement to dismiss the 2004 lawsuit for infringement and breach of the settlement agreement, Mr. Mason declared that U.S. Wheel had not "sold or advertised any Series #35 Wheels or any other 'star' wheels (except those manufactured by HiSpec)," nor had it "supplied any Series #35 Wheels or other 'star' wheels (except those manufactured by HiSpec to anyone)" since the June 2003 settlement agreement. If HiSpec elects to affirm the agreement, the court cannot say as a matter of law that HiSpec cannot prove to a reasonable certainly that it is in a worse position than it would have been, had Mr. Mason made good on the above alleged misrepresentations. Mr. Mason's motion for summary judgment on the fraudulent inducement claim is therefore denied.

HISPEC'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR BREACH OF CONTRACT WITH RESPECT TO THE JUNE 2003 SETTLEMENT AGREEMENT

HiSpec claims entitlement to judgment as a matter of law on its breach of contract claim with respect to the June 2003 settlement agreement because (1) U.S. Wheel continued to sell Series #35 and #135 wheels after the June 20, 2003 settlement agreement, which provided that U.S. Wheel agrees "to forever cease selling or advertising its Series #35 wheels, unless such wheel is manufactured by HiSpec," and (2) U.S. Wheel had 808 additional Series #35 wheels in its

14

inventory despite its representation that it had "zero Series #35 Wheels" in its possession.

In Indiana, "[t]he essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." Berkel & Co. Contractors, Inc. v. Palm & Associates, Inc., 814 N.E.2d 649, 655 (Ind. Ct. App. 2004).[4] Contract terms are conclusive when they are clear and unambiguous, and courts shouldn't construe the contract or look at extrinsic evidence. Forty-One Associates, LLC v. Bluefield Associates, L.P., 809 N.E.2d 422, 427 (Ind. Ct. App. 2004). The parties don't dispute the settlement agreement's existence or the interpretation of the relevant provisions; they dispute only the legal significance of U.S. Wheel's actions. Because the settlement is clear in its terms and the parties' intentions are apparent, the court must require the parties to perform consistently with the bargain they made. First Fed. Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 604 (Ind. 1990).

In support of its argument that U.S. Wheel breached the settlement agreement, HiSpec points to following evidence:

---

[4] A federal district court sitting in diversity generally must follow the choice-of-law rules of the state in which the district court sits. *See* Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-497 (1941). The court of appeals has applied Klaxon to determine that state law governs pendent state law claims. *See* Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 681 (7th Cir. 1986). "Indiana's choice of law rule for actions on contract, where the parties have not made an effective choice of law, calls for applying the law of the forum with the most intimate contacts to the facts." American Employers Ins. Co. v. Coachmen Industries, Inc., 838 N.E.2d 1172, 1178 (Ind. App. Ct. 2005). "The court considers all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." Id. The parties don't contest the governing law, and a review of the relevant factors suggests Indiana law should govern.

15

- U.S. Wheel's receiver report indicating the shipment of 808 Series #35 wheels to Tredit on July 1, 2003;

- U.S. Wheel's inventory report showing purchases for 100 Series #35 wheels on December 18, 2003;

- Tredit's receiver report indicating the shipment of 400 Series #35 wheels and several hundred Series #135 wheels on May 10, 2004;

- Mr. O' Rourke's sworn statement that U.S. Wheel continued to sell Tredit the Series #35 wheels after the June 2003 agreement.[5]

U.S. Wheel's response relies heavily upon the sworn statement of its vice-president, Bob Williams. Mr. Williams affirms that the July 1 delivery was made pursuant to a sale that occurred before the June 23 agreement (although the time of the sale is unclear), and that the 808 wheels in question were in transit at the time of the settlement. U.S. Wheel therefore argues it didn't violate any contractual obligation or representation regarding the sale or possession of the Series #35 wheels as a result of the July 1 delivery. Mr. Williams also testifies that HiSpec manufactured the wheels purchased on December 18, so U.S. Wheel argues that the cessation clause permitted this purchase. Finally, U.S. Wheel says there is a genuine issue of fact as to whether it continued to sell Series #35 wheels to Tredit given Mr. O'Rourke's conflicting statements.

---

[5] To the extent HiSpec relies on the inventory report prepared by Joe Baucom [Exhibit H, Doc. No. 154], the exhibit that was submitted to the court is illegible, so its isn't considered in ruling on HiSpec's motion.

In its reply, HiSpec doesn't contest for purpose of this motion that the July 1 delivery was pursuant to a sale that occurred before the settlement, or that the December 18 purchase of wheels was also in compliance with the settlement agreement, so summary judgment for breach of the settlement agreement on these grounds is denied. Salvadori v. Franklin Sch. Dist., 293 F.3d 989, 996 (7th Cir. 2002) (to successfully oppose a summary judgment motion, a nonmovant can present definite, competent evidence in rebuttal).

HiSpec's remaining assertion that there were additional sales of Series #35 wheels after the June 23 settlement agreement is based primary upon Mr. O'Rourke's sworn statement, but because this statement appears to be inconsistent with his previous deposition testimony, summary judgment on the claim U.S. Wheel breached the settlement agreement by continuing to sale Series #35 wheels to Tredit is inappropriate. Cameron v. Frances Slocum Bank & Trust Co., 824 F.2d 570, 574-575 (7th Cir. 1987) (summary judgment inappropriate when witness makes conflicting statements).

Still, Mr. Williams's statement indicates that the 808 wheels delivered on July 1 were sold before the settlement agreement, and U.S. Wheel doesn't dispute that these were Series #35 wheels that were sold to Tredit. HiSpec says U.S. Wheel has therefore breached the settlement agreement by misrepresenting that it had only sold 3,204 Series #35 Wheels to Tredit. The court doesn't' agree.

A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake. Breeding v. Kye's Inc., 831 N.E.2d 188, 191 (Ind.

17

Ct. App. 2005). U.S. Wheel's alleged misconduct breaches no obligation imposed by the contract, but rather raises a possible claim for inducing HiSpec to enter into the June 2003 settlement agreement. *See, e.g.,* America's Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc., 833 N.E.2d at 1067 (claim for fraud in the inducement is a tort independent of contractual breach). Because neither party addresses this claim in their briefing of HiSpec's motion, this order doesn't address the propriety or existence of it.

For the foregoing reasons, the court GRANTS U.S. Wheel's motion for summary judgment on HiSpec's infringement claim (Count V); DENIES Mr. Mason's motion for summary judgment on Hispec's fraudulent inducement claim (Count III); and DENIES HiSpec's motion for summary judgment on it breach contract claim with respect to the June 2003 settlement (Count I). The court also DENIES HiSpec's motion to strike evidence from the summary judgment record. Finally, the court DENIES WITHOUT PREJUDICE the parties' joint motion to continue the trial and reset the pretrial deadlines.

SO ORDERED.

Entered:  <u>January 8, 2007</u>


          <u>/s/ Robert L. Miller, Jr.</u>
          Chief Judge
          United States District Court